UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LIEUTENANT RICK CANFIELD,           ) | |
|                                                               ) | |
|           Plaintiff,           ) | |
|                                                               ) | |
|     v.                                        ) | No. 3:07-CV-141 PPS |
|                                                               ) | |
| SHERIFF GENE ISAACS;                       ) | |
| CASS COUNTY, INDIANA, BY THE       ) | |
| CASS COUNTY BOARD OF                 ) | |
| COMMISSIONERS; and CASS COUNTY ) | |
| MERIT BOARD;                                   ) | |
|                                                               ) | |
|          Defendants.       ) | |

## OPINION AND ORDER

This case poses the interesting question of whether Title II of the Americans with Disabilities Act applies to employment. It is before the Court on a motion to dismiss. The circuit courts of appeal are split on the issue, and the Seventh Circuit, while recognizing the split in authority, has not had the occasion to decide the issue. (The district courts in this circuit are likewise split on the issue). Title I of the ADA specifically applies to employment but it requires that plaintiffs exhaust their remedies through the EEOC before coming to court. Because the plaintiff in this case failed to exhaust his remedies, he is out of luck unless it is found that Title II also applies to employment. For the reasons stated below, I find that the plain language of the statute makes it clear that Title II does not cover employment. Accordingly, the motion to dismiss is granted as to the ADA count.

### FACTUAL BACKGROUND

According to the Complaint, Plaintiff Rick Canfield has been employed as a deputy sheriff with the Cass County Sheriff's Department since 1976. (Compl. ¶ 17.) He injured his

neck, shoulders, jaw, and back while "apprehending a kick-boxer suspect" in August 2002.  (*Id.* ¶ 19(a).)  Those injuries required five surgeries.  (*Id.*)  He injured his shoulders again in July 2003 when he was crushed in an automatic jail door; these injuries also required surgery.  (*Id.* ¶ 19(b).)  In February 2004, he injured his right knee while apprehending a suspect, and had two more surgeries.  (*Id.* ¶ 19(c).)

Canfield acknowledges that he "has been and is unable to regularly perform road work, which means going out on patrol in a sheriff's car, since February 12, 2004."  (*Id.* ¶ 21.)  His knee is "prone to failure" and he has other physical disabilities with respect to his back, neck, and shoulders.  (*Id.* ¶ 22.)  He claims that he is "permanently disabled but able to perform the essential functions of a job of office work or Detective work or other jobs available in the Cass County Sheriff's Department which do not regularly involve apprehending suspects, regularly . . . getting into and out of a patrol car, and being subjected to frequent, intense physical exertion."  (*Id.* ¶ 23.)

Canfield alleges that he repeatedly requested to be returned to work, but that Sheriff Isaacs has said that he is physically unable to perform any job in the Department, and has refused to return him to active duty.  (*Id.* ¶ 24.)  He asserts that he has requested reasonable accommodation under the ADA, but that Isaacs refuses to offer him any accommodation.  (*Id.* ¶ 26.)  Canfield alleges that he is still employed by the Department, but states that Isaacs "now claims that . . . Canfield is no longer an employee of the Cass County Sheriff's Department because [he] did not perform training required of active duty officers while he was on medical leave in 2004."  (*Id.* ¶ 27.)  According to Canfield, when he attempted to raise his request for accommodation before the Cass County Sheriff's Merit Board (the Complaint does not say

2

when), the Board ruled on October 25, 2006 that it lacked jurisdiction over the dispute because Canfield had not performed the 2004 training. (*Id*. ¶ 28.) Canfield has now performed the required training. (*Id*. ¶ 29.)

Defendants move to dismiss on the grounds that Plaintiff never exhausted his administrative remedies by filing a charge of discrimination with the EEOC. Plaintiff concedes that he did not exhaust his remedies, but argues instead that his claim is covered by Title II of the ADA, which does not require exhaustion. (*Id*. ¶ 7.)

## DISCUSSION

Rule 12(b)(6) provides for the dismissal of claims that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In the Rule 12(b)(6) context, a district court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *Moranski v. General Motors Corp*., 433 F.3d 537, 539 (7th Cir. 2005).

**A. Statutory Overview**

The ADA contains five titles: Employment (Title I), Public Services (Title II), Public Accommodations and Services Operated by Private Entities (Title III), Telecommunications (Title IV), and Miscellaneous Provisions (Title V). Americans with Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 327 (1990). Title I, which specifically covers Employment, provides:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). Title I covers state and local governmental entities that employ 15 or more people. 42 U.S.C. § 12111(2) ("covered entity" includes an "employer"); 42 U.S.C. §

3

12111(5)(A) ("employer" includes a "person engaged in an industry affecting commerce who has 15 or more employees . . ."); 42 U.S.C. § 12111(7) ("person" shall have the same meaning that it is given in 42 U.S.C. § 2000e); 42 U.S.C. § 2000e(a) ("The term 'person' includes one or more individuals, governments, governmental agencies, political subdivisions . . . .").

Assuming that the Cass County Sheriff's Department employs more than 15 people (an issue which the parties have not addressed), Title I would normally apply to Plaintiff's action. However, Title I requires an employee to file a charge with the EEOC in a timely manner prior to filing a lawsuit.  42 U.S.C. § 12117(a) (incorporating the charge requirement from Title VII of the Civil Rights Act of 1964, as amended).  When a plaintiff fails to timely file such a charge of discrimination with the EEOC, dismissal of the Title I ADA claim is appropriate.  *Stewart v. County of Brown*, 86 F.3d 107, 110 (7th Cir. 1996) ("In order to recover for violations of Title I of the ADA, a plaintiff must file a charge of discrimination with the EEOC within 180 days of the alleged violation (if he does not file an initial charge with a state agency)." (citing 42 U.S.C. § 12117(a))).  Plaintiff has not filed an EEOC charge, so he is foreclosed from relief under Title I.  This much he concedes.

With Title I unavailable to him, Canfield seeks relief instead under Title II of the ADA – the section entitled "Public Services."  Most courts that have considered the issue have generally concluded that Title II does not have an exhaustion requirement.  *See Bledsoe v. Palm Beach County Soil and Water Conserv. Dist.*, 133 F.3d 816, 824 (11th Cir. 1998) (finding that there is no exhaustion requirement for Title II claims); *Bogovich v. Sandoval*, 189 F.3d 999, 1002 (9th Cir. 1999) (same); *Davoll v. Webb*, 194 F.3d 1116, 1124 (10th Cir. 1999); *see also Staats v. County of Sawyer*, 220 F.3d 511, 518 (7th Cir. 2000) (noting that while the Seventh Circuit had

4

not decided the issue, some lower courts have concluded that Title II does not require exhaustion of administrative remedies (citing *Petersen v. Univ. of Wis. Bd. of Regents*, 818 F. Supp. 1276 (W.D. Wis. 1993)).  Therefore, for purposes of evaluating this motion, I assume that if the claim under Title II is legally cognizable, Canfield's failure to exhaust would not be fatal to the claim.

As part of the ADA Congress required the Attorney General to promulgate regulations implementing Title II.  42 U.S.C. § 12134(a).  Pursuant to that authority, the Attorney General determined that Title II applies to employment:

> No qualified individual with a disability shall, on the basis of disability, be subjected to discrimination in employment under any service, program, or activity conducted by a public entity.

28 C.F.R. § 35.140(a).

In deciding what to make of these regulations, courts get guidance from *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  Under *Chevron* I must first determine whether Congress has unambiguously expressed its intent on the issue at bar: "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."  *Id*. at 843 n.9.  If, however, Congress has not spoken in unambiguous terms, then the court must defer to the administrative regulation interpreting the statute unless the agency's interpretation is "arbitrary, capricious, or manifestly contrary to the statute."  *Id*. at 844.  This has come to be known as "*Chevron* deference."  *See e.g. United States v. Genendo Pharmaceuticals, N.V.*, 485 F.3d 958, 962 (7th Cir. 2007).

As noted above, there is a split of authority on the issue of whether Title II applies to public employment.  The Ninth Circuit has concluded that Congress unambiguously intended

that Title II not apply to public employment. *Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169, 1173 (9th Cir. 1999); *cf. Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014-15 (6th Cir. 1997) (holding that Title I exclusively addresses employment discrimination under the ADA, and therefore such a claim may not be brought under Title III (Public Accommodation)). The Eleventh Circuit, however, has concluded that Congress left a gap for agency interpretation, and has upheld the interpretation of the Attorney General. *Bledsoe*, 133 F.3d at 822-23. The Seventh Circuit has recognized the split in authority but has not addressed the issue. *Staats*, 220 F.3d at 518.[1]

The Supreme Court has also taken note of the circuit split but has not resolved it. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 n.1 (2001). In *Garrett*, the Supreme Court, albeit in dicta, tipped its hand a bit as to where it stood on the issue. *Garrett* involved the question of whether the Eleventh Amendment prohibited state employees from collecting damages against the state under Title I of the ADA. Title II was referenced by the parties but neither side specifically briefed the issue of "[w]hether Title II of the ADA, dealing with the 'services, programs, or activities of a public entity,' 42 U.S.C. § 12132, is available for claims of employment discrimination when Title I of the ADA expressly deals with that subject." *Id*. In addressing this issue, Chief Justice Rehnquist stated that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally

---

[1] The district courts in this Circuit are also split on this issue. *Compare Brettler v. Purdue Univ.*, 408 F. Supp. 2d 640, 657 (N.D. Ind. 2006) (holding that Title II does not cover claims of employment discrimination against a public employer) *and Patterson v. Illinois Dep't of Corr.*, 35 F. Supp. 2d 1103, 1109-10 (C.D. Ill. 1999) (same) *with Petersen*, 818 F. Supp. at 1278 (concluding that Title II is ambiguous, and deferring to Department of Justice regulation applying Title II to employment) *and Doe v. County of Milwaukee*, 871 F. Supp. 1072, 1074-75 (E.D. Wis. 1995) (relying on 28 C.F.R. § 35.140 to find that Title II applies to employment).

6

presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.*, citing *Russello v. United States*, 464 U.S. 16, 23 (1983) (quotation marks omitted). While this dicta is of course not binding, it gives some indication as to where the Supreme Court, as it was constituted in year 2001, stood on the issue.

**B. Statutory Interpretation**

A court must use "traditional tools of statutory construction" to determine whether Congress has spoken unambiguously to the question at issue in the case. *Chevron*, 467 U.S. at 843 n.9. The operative provision of Title II states:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Thus, there are two key clauses in § 12132: 1) "excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity"; and 2) "be subjected to discrimination by any such entity." Title II only encompasses employment discrimination, then, if employment is considered a "service, program, or activity" of a public entity, or if the more general anti-discrimination clause can be read independently of the first clause such that it forbids discrimination by a public entity in any context, not just in the provision of services, programs, and activities.

As to the first issue, I conclude that "employment" is plainly not a "service, program, or activity" of a public entity. Defining the terms "services," "programs," or "activities" to include employment strains the ordinary meanings of those words. *See Smith v. United States*, 508 U.S. 223, 228 ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning."). I agree with the Ninth Circuit and several other courts that have

7

concluded that "services, programs, or activities" refers to a public entity's "outputs," whereas employment is best understood as an "input." The Ninth Circuit made this point persuasively with the following illustration:

> Consider, for example, how a Parks Department would answer the question, "What are the services, programs, and activities of the Parks Department?" It might answer, "We operate a swimming pool; we lead nature walks; we maintain playgrounds." It would not answer, "We buy lawnmowers and hire people to operate them." The latter is a means to deliver the services, programs, and activities of the hypothetical Parks Department, but it is not itself a service, program, or activity of the Parks Department.

*Zimmerman*, 170 F.3d at 1174 (citing *Decker v. Univ. of Houston*, 970 F. Supp. 575, 578 (S.D. Tex. 1997)); *see also Brettler v. Purdue University*, 408 F. Supp. 2d 640, 655-56 (N.D. Ind. 2006), and the cases cited therein.

That same question posed hypothetically in *Zimmerman* could be asked in this case. If one were to ask Sheriff Isaacs, "What are the activities of the Cass County Sheriff's Department?'', he might respond as follows: "We patrol the roads of Cass County; we investigate violations of Indiana state law; we serve subpoenas; we move prisoners back and forth to court; we collect tax warrants; and we run the Cass County jail." Whatever else might be said in response to the question, I feel certain that the response would not be that "we employ people." Although at least one court has found to the contrary, I find the reasoning in that case to be unpersuasive. *See Dominguez v. City of Council Bluffs, Iowa*, 974 F. Supp. 732, 736-37 (S.D. Iowa 1997) (holding that the phrase "services, programs, or activities" encompasses employment).

That brings us to the second clause of Title II, the clause that states "or be subjected to discrimination by any such entity." Many of the courts that have held that Title II applies to employment have relied on this more general clause to get to that result. However, the

8

remainder of Title II unambiguously demonstrates that Congress intended Title II to be confined to the context of public services.  Like § 12132, the definition of a "qualified individual with a disability" in Title II limits the scope of the Title to people who receive the services of, or participate in the programs or activities of, a public entity:

> The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, *meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity*.

42 U.S.C. § 12131(2) (emphasis added).  This definition demonstrates that Congress did not intend the discrimination clause to stand alone.  As one court recently stated, "Because a plaintiff must be an individual who 'meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity,' the second clause of § 12132, prohibiting 'discrimination by any such entity,' necessarily relates back to the 'services, programs, or activities' set forth in the first clause." *Brettler,* 408 F. Supp. 2d at 657 (emphasis omitted).

The language and structure of the ADA as a whole supports this interpretation and demonstrates that Congress unambiguously intended for Title II not to cover employment.  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation and citation omitted)).  First, and most obviously, "Congress placed employment-specific provisions in Title I, which it labeled 'Employment,' whereas Congress placed no employment-related provisions in Title II, which it labeled 'Public Services.'"  *Zimmerman*, 170

9

F.3d at 1176.

Second, Congress defined "qualified individual with a disability" differently in Title I than in Title II.  In Title I, the term means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  Thus, in Title I, "a person is 'qualified' if the person can work, whereas in Title II a person is 'qualified' if the person is eligible to receive services or participate in a publicly provided program."  *Zimmerman*, 170 F.3d at 1176.

Third, reading Title II to encompass employment claims would make Title I almost completely redundant with respect to public employees, and would result in eliminating Title I's exhaustion requirement.  *Id*. at 1177-78.  Of course, this interpretation is precisely why Plaintiff is pursuing his claim under Title II – but it violates the interpretive canon presuming that no statutory provision is mere surplusage.  *Commodity Trend Serv., Inc. v. Commodity Futures Trading Com'n*, 233 F.3d 981, 989 (7th Cir. 2000).  Given that Congress specifically included the employment practices of state and local governments in Title I, it is unlikely that it intended to strain the language of Title II to cover the same ground.

Finally, Congress gave regulatory authority over Title I to the EEOC, the agency that administers most federal employment-related statutes, but gave the Attorney General the authority to interpret Title II.  *Zimmerman*, 170 F.3d at 1178.  If Title II were construed to include employment discrimination, it would subject public employees to conflicting regulations.  Congress recognized the potential for conflict between regulation under Title I, for which EEOC has enforcement responsibility, and the Rehabilitation Act of 1973, for which the Attorney General has enforcement responsibility, and specifically required coordination between the two.

10

*See* 42 U.S.C. § 12117(b).  The fact that Congress did not include a provision requiring coordination between the two agencies with respect to employment suggests that it did not intend for the Attorney General to have any ability to regulate employment under Title II.

In sum, the language of Title II and the structure of the ADA as a whole lead to the conclusion that Congress unambiguously did not intend for Title II to reach employment discrimination.  The Court acknowledges that other courts have reached the contrary conclusion. In *Bledsoe v. Palm Beach County Soil and Water Conserv. Dist.*, the Eleventh Circuit looked to legislative history tying Title II to section 504 of the Rehabilitation Act, which does extend to employment.  133 F.3d at 821 (citing H.R.Rep. No. 101-485 (III), at 49-50 (1990) ("The purpose of Title II is to continue to break down barriers to the integrated participation of people with disabilities in all aspects of community life.  The Committee intends that title II work in the same manner as Section 504.")).  *Bledsoe* also gave weight to the DOJ regulations that expressly apply Title II to employment discrimination claims.  133 F.3d at 822.

This Court acknowledges that the question is a close one.  But under *Chevron*, once a court finds that the language of a statute is unambiguous, review of legislative history or other outside materials is inappropriate, as is deference to the agency's interpretation of the statute:

> [N]ormally neither the legislative history nor the reasonableness of the [agency's interpretation] would be determinative if the plain language of the statute unambiguously indicated that Congress sought to foreclose the [agency's] interpretation. . . . [I]f the intent of Congress is clear and unambiguously expressed by the statutory language at issue, that would be the end of our analysis.

*Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 127 S. Ct. 1534, 1543 (2007) (citing *Chevron*, 467 U.S. at 842-43).  In this case, I believe that the plain language of the statute forbids me to resort to legislative history or to defer to DOJ regulations, and therefore, I am not persuaded by *Bledsoe*.

11

### III. CONCLUSION

Defendants' motion to dismiss Plaintiff's ADA claim [DE 9] is **GRANTED**. Plaintiff's motions for a hearing on this matter [DE 15, 17] are **DENIED**. The Court has not reviewed Plaintiff's claims under the Rehabilitation Act or the Fair Labor Standards Act, and therefore these claims go forward.

**SO ORDERED**.

ENTERED: November 7, 2007

s/ Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT
